**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2117-18T4

SARA HUTT,

     Plaintiff-Respondent,

v.

DAVID HUTT,

     Defendant-Appellant.

_____

Argued January 22, 2020 - Decided August 13, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0549-16.

John P. Paone, Jr. argued the cause for appellant (Paone, Zaleski & Murphy and Hutt & Shimanowitz, PC, attorneys; John P. Paone, Jr., Catherine Murphy and Thomas J. Perry, on the briefs).

Brian M. Schwartz argued the cause for respondent (Schwartz Vinhal & Lomurro Family Law, LLC, attorneys; Brian Schwartz, on the brief).

PER CURIAM

Defendant David Hutt appeals from a post-judgment order in this matrimonial action directing him to convey half of the 2017-18 distributions he received from certain real estate entities to plaintiff Sara Hutt and awarding her attorney's fees on the motion. He also appeals from the denial of his motion for sanctions against Sara[1] for not filing her motion for her share of the distributions under seal as required by prior orders.

We find no merit in David's appeal of the denial of sanctions against Sara and do not address it here. See R. 2:11-3(e)(1)(E). As to the distributions, we find the terms of the parties' agreements on this issue ambiguous, rendering the matter incapable of resolution without testimony as to their meaning. We, accordingly, vacate that aspect of the order compelling payment of half the distributions to Sara and remand for an evidentiary hearing. We likewise vacate the order awarding Sara her fees on the motion.

The parties settled their divorce in three partial final judgments, followed by a marital settlement agreement. In their September 7, 2018 partial judgment, they agreed to resolve equitable distribution of David's minority interests in seven real estate entities by establishing a new entity, Hutt

---

[1] Because the parties share a surname, we use their first names here for clarity, intending no disrespect by the informality.

Holdings, LLC, into which David would transfer his interests. David and Sara would each own half of Hutt Holdings and have an equal entitlement to income, profits, and distributions and an equal responsibility for any and all liabilities, including any mortgages, capital calls and income taxes. The judgment also provides in pertinent part:

> Nothing herein shall be construed to limit the right of either party to seek a credit from the other as it relates to any capital calls the HUSBAND paid for these entities pendente lite, and any distributions made in connection with the HUSBAND's interest in these entities pendente lite.

Five days later, the parties entered into a marital settlement agreement that references Hutt Holdings in paragraph 4.8. The MSA lists the same seven real estate entities; states that the parties have entered into a partial final judgment providing for David's transfer of his interests in those entities into Hutt Holdings, and have executed an operating agreement to form the company. The MSA also provides that David shall "make diligent effort" to provide Sara the operating agreements for each of the seven entities; as well as any notices, letters, emails, accountings or other documents David received in 2017-18 for each entity; and "[a] schedule of all distributions to [David] and contributions/capital calls made by [David] for 2017 and 2018 year to date related to each entity."

A-2117-18T4

The Hutt Holdings entities are also addressed in paragraph 14.4(c) in the section of the MSA addressing taxes. That paragraph provides:

> [David] has received/will receive the consequence of operating income or operating loss related to his interest in the various entities listed in paragraph 4.8, above. For the tax years 2015, 2016, 2017, and 2018, the Husband shall be entitled to claim same on his tax return. For the years 2019 and thereafter, the parties shall equally divide on their income tax returns any and all income or losses related to the various entities listed in paragraph 4.8. Therefore, the Husband shall provide the Wife with copies of 1099 and K-1 related to these entities for the years 2019 and thereafter, such that the Husband and Wife can each declare 50% of the income and take 50% of the loss on his/her income tax returns.

The MSA contains the usual clauses that the agreement "contains the entire understanding of the parties," that "there are no representations, warranties, covenants or undertakings other than those expressly set forth," that each party "waives and relinquishes any and all rights . . . to share in the property . . . of the other," and "released and discharged . . . the other of and from all causes of action, claims, rights or demands whatsoever . . . in which either of the parties ever had or now has against the other," as well as an express waiver of any claims "to a modification of or adjustment to any of [David's] pendente lite . . . support obligations pursuant to Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995)." The parties each testified on

4

the record that the MSA and the attached partial judgments represented "a full settlement of all the issues" of their marriage and that nothing was "left out."

Two months after entry of the divorce, David's lawyer sent Sara's lawyer a letter containing the schedule of the distributions/contributions and capital calls for 2017-18 for the seven real estate entities to be transferred to Hutt Holdings. The parties agree that David received a total of $40,587.67 in distributions net of capital calls in 2017-18. Sara thereafter filed a motion seeking half of that sum in accordance with the provision of the September 7, 2018 partial judgment permitting either party to seek a credit relating to distributions David received from the Hutt Holdings entities pendente lite.

David opposed the motion, claiming the parties' agreement to create Hutt Holdings was a prospective undertaking to effect equitable distribution of their assets upon entry of the divorce judgment. He claimed there was no agreement that Sara would share in his pendente lite income from those entities retroactively. In support of his argument, David relied on paragraph 14.4(c) of the MSA, in which the parties agreed that David had received "the consequence of operating income or operating loss relating to his interest" in the Hutt Holdings entities and was entitled to claim same on his tax returns for 2015 through 2018, with the parties in 2019 and thereafter equally dividing

and declaring all such income or losses. David claimed the clause made clear the parties had agreed that he was entitled to retain the distributions from the Hutt Holdings entities in 2017-18 and was thus responsible to pay the taxes on that income.

According to David, the import of the clause was clear; he received one hundred percent of the income through 2018, and he paid one hundred percent of the taxes. When he and Sara began to equally divide that income in 2019, Sara would be responsible for her share of the taxes. David insisted Sara's claim to half the net distributions was inconsistent with both paragraph 14.4(c) and the Mallamo waiver, as it would provide Sara a retroactive adjustment, pendente lite, while making David responsible for the taxes on Sara's half, which was not agreed to anywhere.

David also pointed to two prior drafts of the MSA in which Sara proposed that the parties should equally divide all gains or losses in the Hutt Holdings entities, first for tax years 2017-18, and when he rejected that, for tax year 2018. He asserted those negotiations establish that the "credit" Sara sought was explicitly rejected before the parties signed the MSA.

Sara, for her part, argued that she could not pursue the credit permitted in the September 7, 2018 partial judgment until David told her how much

money was distributed to him during 2017-18, as he was obligated to do by paragraph 4.8 of the MSA. When he did so two months after the divorce, she made an immediate claim for her share of the monies. David countered that if Sara intended to leave open a claim upon entry of the divorce, she needed to have expressly reserved it in the MSA or on the record and did neither. Sara countered that she reserved the claim in the September 7, 2018 partial judgment and inserted in the MSA the provision in paragraph 4.8 that David supply her with the 2017-18 distribution schedule in order to determine whether she was entitled to a credit. Sara argued the only point of the requirement in paragraph 4.8 of the MSA that David produce the distribution schedules for the Hutt Holdings entities was to permit her to pursue the claim she reserved in the September 7, 2018 partial judgment.

The judge hearing the motion was familiar with the matter as the parties had been in litigation for three years and it was the oldest case on the judge's docket. The judge analyzed both the September 7, 2018 partial judgment and the MSA "word by word" and did not find "that anything in the marital settlement agreement changes" the sentence in the partial judgment permitting "either party to seek a credit form the other as it relates to any capital calls [David] paid for these entities pendente lite and distributions made in

7

connection with [David's] interest in these entities pendente lite." The judge stated "that sentence is there because everyone agreed there was some unknowns in the case and that they were going to leave that issue open." He found "there's nothing in . . . the subsequent final judgment of divorce that counters the fact that it doesn't give an absolute right to receive them, but it certainly gives the right to pursue them, which is what [Sara's] doing today."

The judge did not address David's argument that the two prior drafts of the MSA established that the parties intended to, and did, resolve that open issue in the MSA. Instead, he concluded:

> I don't see how it's any different from any other asset. The parties agreed eventually at the final judgment of divorce that was part of the marital res. To the extent that there was anything taken out of it during the pendency of the litigation, I think she's entitled to her 50 percent of it.

David appeals, reprising the arguments he made to the trial court, and adding that it erred in re-writing the parties' MSA to give Sara a better deal than she negotiated for herself. Sara argues the trial judge had a "feel for the case" that we don't, that our standard of review requires that we defer to the judge's "fact-finding," and that the parties' agreement is unambiguous.

This was a settled divorce. The only issue before the trial court, and now on appeal, is whether the language of the September 7, 2018 partial

8

judgment and the MSA is so "clear and unambiguous" that the parties' intent to either reserve a claim to seek a credit against the sums David paid or received on account of the entities in Hutt Holdings during 2017-18, or foreclose one, is plain. See Quinn v. Quinn, 225 N.J. 34, 45 (2016). Having read the record, listened to the parties' arguments, and studied the language of their agreements, we simply cannot divine the parties' intent on this point from reading the documents.

Those documents can certainly be read to support Sara's position that this was a reserved claim. But the failure to make the reservation express in the MSA, and the drafts of that agreement evidencing David's rejection of Sara's request that they share equally the income and losses for the Hutt Holdings entities in 2017 and 2018 as they agreed to do in 2019 and going forward, raises doubts. Sara's explanation in her brief that paragraph 14.4(c) does not address the reserved claim but instead relates to "a substantial net operating loss," a marital asset, one hundred percent of which David claimed on his separate return for 2015, and reflects the parties' "various agreements to resolve the various issues concerning their tax filings in paragraphs 14.3 and 14.4," may well be true but is not obvious from reading the documents. David's claim that the drafts and paragraph 14.4(c) of the MSA make plain the

9

parties agreed that he was entitled to keep all of the distributions from the Hutt Holdings entities in 2017-18, is likewise questionable in light of the inclusion in paragraph 4.8 that he provide Sara with a schedule of the distributions/contributions and capital calls for the entities in 2017-18.

"An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn, 225 N.J. at 45. In interpreting a contract, it is axiomatic that the provisions are to be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001). Construction of contract language is generally a question of law, unless, of course, its meaning is unclear and turns on conflicting testimony. Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001).

A trial court's role in interpreting a marital settlement agreement is to discern the common intent of the parties from "what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). "[W]hen the intent of the parties is plain and the language is clear

10

and unambiguous, a court must enforce the agreement as written." Quinn, 225 N.J. at 45. But when the parties' intent is not clear from the document and they ascribe different meanings to ambiguous terms, the court has no alternative but to conduct an evidentiary hearing "at which the parties' credibility [can] be assessed and their intentions gleaned." Pacifico, 190 N.J. at 267.

We think it plain from what we've said about the documents and the parties' positions on what they mean, that an evidentiary hearing was required. We do not agree, however, with David that the experienced trial judge improperly made findings of fact on conflicting certifications. The judge conscientiously studied the documents, and concluded he could construe them in the context of the circumstances and apply "a rational meaning in keeping with the expressed purpose," Pacifico, 190 N.J. at 266, likely with the idea that he could fairly spare the parties an evidentiary hearing, the combined cost of which would likely exceed the sum in dispute. We simply disagree that was possible, especially in light of the drafts of the MSA and the parties' certifications.

Accordingly, we vacate that aspect of the January 4, 2019 order directing David to pay Sara half of his net distribution in 2017-18 from the

11

Hutt Holdings entities, and remand for further proceedings not inconsistent with this opinion. Our resolution likewise necessitates vacating the fee award to Sara on the motion; any fee award should abide disposition of the hearing.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION